CAPITAL CITY BANK, Appellant-Complainant v. HARRY E. BAKER, Mrs. Richa Davis and First American National Bank of Nashville, Appellees-Defendants.—442 S.W.2d 259.

Middle Section. February 8, 1969.

Certiorari Denied by Supreme Court June 2, 1969.

478

Maclin P. Davis, Jr., and James R. Cheshire, III, Nashville, for appellant-complainant.

J. Victor Barr, Jr., and J. Brad Reed, Nashville, for appellees-defendants.

PURYEAR, J. This is an appeal by Capital City Bank, to which we will refer as complainant from a decree of Part One of the Chancery Court of Davidson County, dismissing complainant's bill as to the appellees-defendants, Mrs. Richa Davis and First American National Bank, to whom we will hereinafter refer as defendants. The other defendant in the Court below, namely, Harry E. Baker, is not involved as a party in the issues presented for determination on this appeal.

Complainant filed its original bill against defendants on February 13, 1968, alleging that on January 11, 1968, for a valuable consideration, defendants Harry E. Baker and Mrs. Richa Davis, executed and delivered to complainant their promissory note in the sum of $11,774.00 payable to complainant on demand with 6% interest from date; that complainant made demand upon defendants Baker and Davis for payment of said note but they failed to pay same and the bill was filed for the purpose of collecting such note, together with interest thereon and reasonable attorneys fee.

The bill prayed that an attachment issue and be levied on all money, property and effects of the defendant, Mrs. Davis, in the possession of the defendant, First American National Bank; that an interlocutory injunction issue against said First American National Bank enjoining it not to pay any money, account or debt to Mrs. Davis or to anyone for her. The bill prayed that complainant be awarded a decree for the amount due on said note, together with interest and attorneys fee, for an injunction and attachment, and for general relief.

On the date said bill was filed the Chancellor issued the interlocutory injunction as prayed against First American National Bank, which Bank filed an answer alleging

that it was holding $16,127.43 pursuant to said injunction.

The defendant, Mrs. Davis, filed an answer and cross-bill in which she admitted that she executed the note on January 11, 1968, but denied that it was executed for a valuable consideration insofar as she was concerned, and alleged that fraud had been practiced upon her by complainant in conspiracy with her co-defendant, Harry E. Baker.

In her cross-bill, Mrs. Davis alleged that on January 11, 1968, said note was executed by her after being advised that there was ample security in the form of assigned contracts to secure payment of said note, when in fact complainant knew that there was not such ample security; that an officer of said complainant, in conspiring with the defendant, Harry E. Baker, had induced defendant, Mrs. Davis to sign said note.

The cross-bill prayed that said note be declared void insofar as Mrs. Davis was concerned and she be saved harmless from any judgment or execution on same.

The complainant filed an answer to Mrs. Davis' cross-bill denying that any fraud had been practiced upon her or that there was any conspiracy between complainant and any of its officers or representatives and the other defendant, Harry E. Baker.

No answer was filed by Baker and a judgment pro confesso was entered against him.

By stipulation of the parties, the case was tried upon oral testimony and documentary evidence before the Chancellor on the 26th day of June, 1968, as a result of which trial the Chancellor dismissed the bill against

Mrs. Davis and First American National Bank and awarded complainant a judgment against the other defendant, Harry E. Baker, in the amount of $11,774.00 together with interest in the amount of $323.79 and attorneys fee in the sum of $1,250.00.

From that portion of the Chancellor's decree dismissing complainant's bill as to the defendants, Mrs. Davis and First American National Bank, complainant prayed and was granted an appeal which has been perfected and two assignments of error have been filed, which assail the Chancellor's decree of dismissal of the suit as to Mrs. Davis and First American National Bank upon the grounds there is no evidence of fraud and no evidence that the defendant, Mrs. Davis, relied upon representations of complainant's officer in procuring Mrs. Davis' signature upon the note and no evidence that complainant's officer made any misrepresentation.

Although several witnesses testified in the case, the real controversy centers around the testimony of Mrs. Davis, one J. M. McGrew, a Vice-President and loan officer of the complainant Bank, and one U. Grant Browning, who was engaged in the construction business as Lake Park Construction Company, which construction company had made some contracts with the other defendant, Harry E. Baker, as a sub-contractor, and which contracts were pledged to secure the indebtedness owing by Baker to complainant.

As we have already said, judgment pro confesso was taken and entered against the defendant Baker and it is further observed here that he did not testify in the case.

Mr. McGrew testified that, at some time prior to January 11, 1968, Baker became indebted to complainant in

the total amount of $11,774.00 evidenced by several notes having a total of that amount, and that Baker had pledged to the bank certain executory contracts as collateral security for payment of these notes; that he became aware of the fact that Baker had mishandled some of the money which had been loaned to him by complainant for the purpose of giving him the necessary financial assistance to execute the contracts which he had pledged to complainant; that when these notes became due he sent notices to Baker, to which he received no response, and, therefore he undertook to reach him by telephone but was unsuccessful in doing so.

This witness further testified that, finally, he went to Baker's home, where they met and discussed the matter and during which discussion Baker admitted that he had mishandled some of the money which had been loaned to him by complainant. As a result of this discussion Baker said he had a friend whom he believed would help him, whereupon, Baker agreed to bring this friend to the bank with him on the following morning, which was January 11, 1968.

This friend to whom Baker was referring was the defendant, Mrs. Davis, and she went to the complainant's banking office with Baker on January 11, 1968, at which time she and Mr. McGrew discussed Baker's situation. Specifically Mr. McGrew's version of the conversation between himself and Mrs. Davis on January 11, 1968, is as follows:

"Q. Now, Mr. McGrew, when you talked to Mrs. Davis about executing this note, what did you tell her about the assignments of contracts that you put in the body of the note as to where the money would be coming from, and when, and such as that?

A. I could not tell her when; but we spread the contracts out, and called the names, the amount, the amount that had been advanced, and the remaining amount in the assignment for contracts. I told Mrs. Davis in Mr. Baker's presence that he had misused his money; that he was quite sure that he could work the matter out if given additional time.

Q. Did you at this time have any idea at all that any of these assignments of contracts were valueless?

A. No, sir.

Q. That includes the one in Florida that you had advanced money on. You did not know that one could not be performed?

A. No, sir.

Q. When you stated awhile ago you didn't know whether it was before or after you found out about it, now you are stating that you didn't know at this time, is that right?

A. At the time Mrs. Davis executed the note and Mr. Baker executed the note. I did not know that the assigned contract was worthless.''

(B. of E. pp. 20, 21)

During the course of his testimony Mr. McGrew admitted that at some time or other, Mr. U. Grant Browning of Lake Park Construction Company told him Baker was not performing his part of one contract which he had with Lake Park Construction Company and which was one of the contracts pledged to the complainant and, therefore, Baker would not be paid any money on that particular contract.

Prior to the trial, the discovery deposition of this witness was taken, in which he testified as follows:

"Q. Let me ask you just one more question, Mr. McGrew, you said something about you did find out that a Florida contract had no money coming to payment on it, is that correct?

A. Yes, sir, but I don't know when.

Q. How did you find out that it had no money coming on the contract?

A. I called Mr. Browning.

Q. Do you mean you found out because Mr. Browning told you?

A. Yes, sir.

Q. And you don't remember whether that was before this last note was signed or after?

A. No, sir."

(B. of E. pp. 22, 23)

He specifically denied that, at the time Mrs. Davis signed the note, or any time prior thereto he ever told her that Baker would be entitled to any sum of money under the pledged contracts or that he represented to her that such contracts were worth any particular amount.

When questioned on cross-examination about the representations made to Mrs. Davis about the value of Baker's contracts, he testified as follows:

"Q. Prior to the time she took the note, did you tell her that Mr. Baker had no money coming that you

knew of? Did you tell her that on the date of February 12, 1968?

A. Did I tell her?

Q. Yes.

A. I don't know."

(B. of E. p. 70)

The defendant, Mrs. Davis, testified that she knew Baker about two years before signing the note in question here and that she and Mrs. Baker were friends; that she had loaned him approximately $1,400.00; that at Baker's request, she went to complainant's banking office on January 11, 1968, where she and Mr. McGrew discussed Baker's financial situation and the contracts which had been pledged by Baker to secure the indebtedness to complainant.

On the question of representations made to her by Mr. McGrew, she testified as follows:

"Q. Did you and Mr. McGrew have a conversation about the money that was supposed to come from these assignments of contracts?

A. Yes, sir.

Q. And what did Mr. McGrew tell you about the first one, the Lake Worth Apartment contract?

A. He didn't talk about this one so much.

Q. Did he say anything about—that is the Florida contract, is it not?

A. The Lake Worth, $7,431.00, Natchez Court contract was the one that Mr. McGrew discussed at length.

Q. Did Mr. McGrew advise you approximately how much money was to come out of each one of these contracts to apply on this note?

A. Yes, sir.

MR. DAVIS: I object, if the Court please, to the leading question.

Q. Did Mr. McGrew at any time indicate to you about the condition of these contracts at all?

A. He was continuously referring to this list of contracts. It is true he had the contracts on the table, but he had the list of contracts, where all the contracts were together. He referred to these instead of the contracts themselves.

Q. Well, did he say these contracts were good or bad?

A. This $15,000.00 he kept referring to as good and it would be in soon. This $15,670.00 contract was the one that he referred to as being finished and something that I could depend on right away. And this $15,000.00 one is the one that I really listened to him about.

Q. Did you and Mr. McGrew have any conversation regarding Mr. Baker's financial situation?

A. That was why I was there. We did.

Q. And what was that conversation about, Mrs. Davis?

A. That these contracts were to be finished, and when they were finished he had money coming to him. That they had to be finished.

Q. And that is what Mr. McGrew told you?

A. Yes.''

(B. of E. pp. 27, 28, 29)

This witness also testified that when she signed the note, she asked Mr. McGrew to give her a list of the pledged contracts, which he agreed to do, but never did and, finally, she went to the bank on February 12, 1968, for the purpose of getting a copy of such contracts, at which time Mr. McGrew told her, for the first time, that the contracts which Baker had pledged to secure the note were of doubtful value and that Baker had mishandled some of the money which had been loaned to him.

On this occasion Mrs. Davis admitted that she lost control of herself, picked up the note and undertook to put it in her purse but was forcibly restrained from doing so by some of the employees of the complainant.

Mr. Browning, of Lake Park Construction Company, testified that he had subcontracted some painting, decorating and carpeting to Baker for which he signed two written contracts under which Baker would have received the total sum of $23,101.20 for doing such work, which contracts were, with his consent, pledged to complainant for the purpose of securing complainant's loan to Baker.

This witness testified that Baker failed to perform the $15,670.00 contract for painting and decorating and it was necessary for him to get someone else to do this work, which information he communicated to Mr. McGrew. The question of just when he communicated this information to Mr. McGrew is an important factor in the case and Browning's testimony on this phase of the matter is as follows:

"Q. After you learned that this contract could not be performed with Mr. Baker, did you have any conversation with Mr. McGrew at the bank?

A. Yes. We talked two or three times—some time as I began to see that it would not work out. Mr. McGrew and I had never met. We talked several times, and I indicated to him that I would keep him informed as to Harry's, Mr. Baker's progress on the job.

Q. Did you do that?

A. Yes.

Q. Can you pinpoint as to time when you had to get someone else to do that job?

A. Not unless I had some records here. I could look at the payroll and find out when this was done.

Q. To the best of your recollection, would it be before or after January of 1968?

A. I think before.

MR. DAVIS: I object to that, if the Court please. That is not competent.

Q. Well, can you supply the payroll records on that job?

A. Yes, the payroll records are available.

Q. Could you get them this morning for us?

MR. DAVIS: I object. This is not material.

THE COURT: Mr. Davis, to me it is very material.

MR. BARR: I think it is too.

Q. Can you get those for us?

A. I could call and get verification of the payrolls as to when they started.

Q. Mr. Davis won't accept that. Could you get the payroll record here for us?

A. This morning?

Q. Yes."

(B. of E. pp. 53,54)

If the payroll records to which the witness referred in the foregoing testimony were ever filed as exhibits in the case, they do not appear in the record which we have before us.

This witness also testified that he made another contract with Baker to do some carpeting and some money was earned by Baker on this contract, which was applied on the loan, but the contract which was not performed by Baker and under which he did not earn anything and was not paid anything is in the amount of $15,670.00 to be paid for certain painting and decorating to be done on an apartment complex known as Natchez Court Complex.

The Chancellor did not file any memorandum opinion or make any finding of fact, either written or oral, but simply recited in his decree the following:

"This cause came on to be heard on June 26, 1968, before Honorable Ned Lentz, Chancellor, pursuant to stipulation that the cause would be heard on oral testimony, upon complainant's bill, order pro confesso against defendant Harry E. Baker as to said bill, answer of defendant First American National Bank of Nashville, answer and cross-bill of defendant Mrs. Richa Davis, order pro confesso against defendant Harry E. Baker as to said cross-bill, complainant's answer to said cross-bill, testimony of witnesses in open court and the entire record herein, *from all of which it appeared to the Court that complainant's bill should be dismissed as to the defendant*

*Mrs. Richa Davis and the defendant First American National Bank* at the cost of complainant, and that complainant should be awarded judgment against defendant Harry E. Baker on the promissory note executed by him dated January 11, 1968, in the amount of $11,774 with interest thereon from said date in the amount of $323.79 and attorney's fee of $1,250." (Italics ours)

(Tec. Rec. p 21)

As we have heretofore noted, in addition to relying upon the defense of fraudulent concealment, Mrs. Davis also relied upon the defense of want of consideration, insofar as she was concerned.

Apparently, the learned Chancellor resolved one or both of the issues raised by the pleadings and proof in favor of Mrs. Davis.

The fact that the note upon which this suit is founded was made payable "on demand" refutes any idea of an agreement for extension of time being granted to Baker as consideration for Mrs. Davis signing his note.

When this is coupled with the fact there is no evidence in the record to the effect that the complainant promised Baker any extension of time it appears to us there was a total lack of consideration for Mrs. Davis' promise upon which this suit is founded against her.

In the case of Cathcart v. Thomas, 67 Tenn. 172, 174 (1874), the Supreme Court quoted with approval from Parson's on Contracts as follows:

"It is said by Mr. Parsons, in his work on Contracts, vol. 1, 440, 'an agreement to forbear for a time, proceedings at law or in equity, to enforce a well founded

claim, is a valid consideration for a promise.' Further on, page 442, 'nor need the agreement to a delay be for a time certain, for it may be a reasonable time only, and yet be a sufficient consideration for a promise. But in declaring on a promise made on such a consideration, the plaintiff must allege and prove the actual time of forbearance, and if this be judged by the court to be reasonable, the action will be sustained; but when the stay of action is wholly uncertain, or such as can be of no benefit to the debtor or detriment to the creditor, it is not enough.' " Cathcart v. Thomas, supra, pp. 174, 175.

In the New York case of Strong v. Sheffield, 144 N.Y. 392, 39 N.E. 330 (1895), suit was filed against the wife of a debtor who indorsed the husband's renewal note. The only consideration for the wife's indorsement claimed as part of the transaction was an agreement by the plaintiff when the note was given to forbear the collection of the debt, "or request for forbearance," (sic) which was actually followed by forbearance for a period of about two years subsequent to the execution of the note and indorsement.

The note in question was made payable "on demand" and, in holding that the defense of lack of consideration was a meritorious one, the New York Court of Appeals said:

"The debtor and the defendant, when they became parties to the note, may have had the hope or expectation that forbearance would follow, and there was forbearance in fact. But there was no agreement to forbear for a fixed time, but an agreement to forbear for such time as the plaintiff should elect. The consid-

eration is to be tested by the agreement, and not by what was done under it. It was a case of mutual promises, and so intended. We think the evidence failed to disclose any consideration for the defendant's indorsement, and that the trial court erred in refusing so to rule." Strong v. Sheffield, supra, p. 331.

In holding that want of consideration is a meritorious defense in this case, we are not unmindful of the fact that the note upon which this suit is founded was signed after the effective date of the Uniform Commercial Code, which provides in part as follows:

"Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (sec. 47-3-305), except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind."

T.C.A. Section 47-3-408

■ However, we do not construe the foregoing language of the Code as eliminating the necessity for a renewal obligation, such as that involved here, to be supported by a valuable consideration other than the original obligation itself, in order to bind another party, such as Mrs. Davis in the instant case, who was not an obligor upon the original instrument.

■ By enacting this particular provision of the Uniform Commercial Code, we think the Legislature of Tennessee simply intended to and did write into and make a part of such Code the long established law of this State that a pre-existing debt is sufficient consideration, by itself, to support a renewal thereof by the obligor upon such original debt.

██ ██ Of course, this appeal brings the case to us for review de novo under T.C.A. Section 27-303· accompanied by the usual presumption that the decree of the trial Court is correct unless the preponderance of evidence is otherwise. This presumption of correctness is entitled to more than the usual indulgence since the case was tried upon oral testimony, thus giving the Chancellor an opportunity, which we do not have, to observe the manner and demeanor of the witnesses while testifying before him and to determine which way the evidence preponderated.

██ It has been held, both by the Supreme Court and this Court, that where a case is tried without intervention of a jury, upon oral testimony, the trial Judge's finding of fact dependent upon the credibility of the witnesses is entitled to great weight. Trice v. McGill, 158 Tenn. 394, 13 S.W.2d 49 (1929); Jackson v. Jackson, 25 Tenn.App. 198, 154 S.W.2d 797 (1939); Roberts v. Ray, 45 Tenn.App. 280, 322 S.W.2d 435 (1959).

After considering the entire record in this case, we cannot say that the evidence preponderates against the decree of the Chancellor, regardless of whether the issues were resolved in favor of the defendant upon one or both of the defenses interposed by her.

Having due regard for the weight to be accorded to the Chancellor's factual conclusions with regard to testimony of the respective witnesses and the probative value thereof, we do not think the complainant has carried the burden of showing, as it must do upon this appeal, that the evidence preponderates against the decree of the Chancellor and, therefore, such decree is,

in all respects, affirmed. The complainant, Capital City Bank, will pay all of the costs of this appeal.

Todd, J., concurs.

Shriver, P. J. (M.S.), not participating.