383 So.2d 1089 (1980)
Shelby T. WILSON, Executor of the Estate of Shelby C. Wilson, Deceased
v.
PLANTERS BANK OF TUNICA, Mississippi.
No. 51865.
Supreme Court of Mississippi.
May 14, 1980.
Semmes Luckett, Leon L. Porter, Jr., Clarksdale, for appellant.
Tucker & Tucker, Jack N. Tucker, Tunica, for appellee.
Before PATTERSON, C.J., ROBERTSON, P.J., and SUGG, J.
PATTERSON, Chief Justice, for the Court:
This case arose in the Chancery Court of Tunica County when the executor of the estate of Shelby C. Wilson contested the $125,000 claim of the Planters Bank of Tunica (the bank) against the estate. From a decree allowing the claim, the executor appeals, arguing that the accommodation endorsement of Shelby C. Wilson on his son's negotiable instrument cannot be enforced because of equitable defenses and because no consideration was received for it.
On January 16, 1975, Tombo Wilson acquiesced in the bank's request that he renew and consolidate his two outstanding notes in a single $125,000 demand instrument. The witnesses disagreed as to whether he consented with the bank's suggestion that his father, Shelby C. Wilson, sign as an accommodation endorser. However, the evidence shows Shelby C. Wilson expected the visit of H.D. Holmes, the bank's president, on the afternoon of January 16, saying when Holmes arrived, "I understand you have something for me to sign." Shelby signed the note "payment guaranteed," and Holmes left. On January 30, 1975, Shelby died.
There is no question but that Shelby C. Wilson was aged and suffered a distressing array of physical maladies on January 16 when he endorsed this substantial obligation to accommodate his son. The record convinces us of this much, but it also confirms that the chancellor had solid footing in the facts when he wrote the following in his opinion:
Mr. Wilson was in bad health and his vision was very poor, but he clearly was *1090 competent. It is my opinion that he knew and understood what he was signing and that he is chargeable therewith. Mr. Wilson was experienced in business and legal matters, and was able to understand the effect of his endorsement and guaranty of his son's note. During the period before and after signing this note he continued to serve on the County Board of Supervisors and he carried on substantial business transactions. There is no indication of fraud, duress, or misleading by the Bank... .
We think the complete medical details of Shelby's physical condition before his demise would be unenlightening. It is enough to say the chancellor's findings supporting his rejection of the executor's equitable defenses advanced through Mississippi Code Annotated section 75-1-103 (1972) contain no manifest error and therefore must be affirmed. E.g., O.J. Stanton & Co., Inc. v. Mississippi State Highway Comm., 370 So.2d 909 (Miss. 1979).
The appellant next contends that Shelby received no consideration for lending his name to the instrument of his son and because of this the estate is relieved of any obligation in payment. Mississippi Code Annotated section 75-3-408 (1972) states in part:
Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (Section 3-305) [§ 75-3-305], except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind. .. .
We think the proviso of the "except" clause of the statute controls. "Antecedent obligation of any kind," in our opinion, includes Tombo's obligation. The familiar expression, "past consideration is no consideration," has no place in this area of commercial law. Though prior in time, the consideration supporting the original obligation, in this case, the proceeds Tombo received in exchange for his two notes prior to consolidation, supported not only his consolidation and renewal in the $125,000 note, but Shelby's accommodation endorsement as well. While the statute indicates "no consideration is necessary" because there is obviously none in this situation in the technical sense, the aim is simply to expand temporally in the interest of commerce the principle that consideration need not flow to the promissor; it may flow to another and may flow before the promise is made on the instrument. This sequence is the hallmark of an accommodation party to a negotiable instrument. As UCC § 3-408, Official Comment 2 states:
The "except" clause is intended to remove the difficulties which have arisen where a note or draft, or an indorsement of either, is given as payment or as security for a debt already owed by the party giving it, or by a third person. The provision is intended to change the result of decisions holding that where no extension of time or other concession is given by the creditor the new obligation fails for lack of legal consideration [emphasis supplied].
The courts have widely adopted the statutory construction suggested by this language despite the argument that lack of consideration renders unenforceable the contract of an accommodation party to a negotiable instrument. E.g., Blake v. Coates, 292 Ala. 351, 294 So.2d 433 (1974); Musulin v. Woodtek, 260 Or. 576, 491 P.2d 1173 (1971); Castle v. Bagley, 24 Utah 2d 136, 467 P.2d 408 (1970); General Tire v. Solomon, 124 Ga. App. 308, 183 S.E.2d 573 (1971). Capital City Bank v. Baker, 59 Tenn. App. 477, 442 S.W.2d 259 (1969), marks a rare exception which we note critically, thinking it contrary to the plain meaning of the statute.
The executor relies upon First American National Bank of Iuka v. Alcorn, Inc., 361 So.2d 481 (Miss. 1978), in support of his argument that consideration in the ordinary contractual sense is necessary to support the undertaking of an accommodation party to a negotiable instrument. We acknowledge that the advent of the Uniform Commercial Code in this state antedated our decision in Iuka, but our review of the Iuka *1091 briefs reveals that none of the many parties in the multifarious issues of that appeal cited Mississippi Code Annotated section 75-3-408 (1972). Indeed, we think it would have been inapposite had it been cited, because Iuka involved a separate contract of guaranty embracing even future advances to a third person. The aspect of the case to which the executor calls our attention did not concern liability arising from the surety's signature on a negotiable instrument.
At any rate, in First National Bank of Jackson v. Carver, 375 So.2d 1198 (Miss. 1979), we made clear our position that section 75-3-408 displaced prior decisional law on the subject of consideration in a negotiable instrument setting.
AFFIRMED.
SMITH and ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.