Charles GALBREATH, Plaintiff–
Appellant,

v.

Robert C. HARRIS and wife, Frances
A. Harris, Defendants–Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Nov. 7, 1990.

Rehearing Denied Nov. 28, 1990.

Application for Permission to Appeal
Denied by Supreme Court
April 8, 1991.

Charles Galbreath, pro se.

Gail Pigg, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiff Charles Galbreath from the trial court's dismissal of his complaint in which he sought to recover rent under a lease.

The pertinent facts are as follows:

Plaintiff and defendants jointly owned two parcels of real property, one located on Northcrest Drive and the other on Eighth Avenue South, both in Davidson County, Tennessee.

On 29 March 1977, the parties entered into a lease whereby plaintiff leased his one-half interest in each of the two parcels to defendants for the sum of $1,077.33 per month.

In August 1977, defendants purchased plaintiff's one-half interest in the Eighth Avenue parcel for $42,000.

In February 1979, because of financial problems, the parties agreed to amend the 29 March 1977 lease as follows:

1. The rent provided for Parcel 1, 405 Northcrest Drive, more particularly described in said lease, for a two-year period commencing March 1, 1979 and ending February 29, 1980, is deferred until the expiration of said lease on the 31st day of March, 1987 and the term of said lease is hereby extended for an additional two years, or until the 31st day of March, 1989, with interest of $700, payable of [*sic*] the 1st day of April, 1979 and a like amount on the 1st day of April, 1980.

2. The lessee shall have, and is hereby given by lessor, an option to purchase the lessor's ½ undivided interest in the leased premises at anytime prior to March 1, 1984 for $50,000 and upon exercise of said option all obligations under the lease shall cease and become null and void.

Defendants paid rent to plaintiff from the inception of the lease through February 1979. Then, in accordance with the February 1979 amendment, defendants discontinued rent payments.

The rent set forth in the February 1979 lease of "$1077.33 or 7% of monthly gross receipts whichever is greater" was for the rental of plaintiff's one-half interest in both the Eighth Avenue and 405 Northcrest Drive parcels.

Plaintiff admits that after August 1977 when defendants purchased plaintiff's one-half interest in the Eighth Avenue parcel, defendants ceased to be liable to plaintiff for rent on the Eighth Avenue parcel because defendants "would not charge [themselves] rent."

Plaintiff's admission is in keeping with the language of the amendment.

In June 1980, the parties agreed to sever their relationship insofar as ownership of the Northcrest Drive parcel was concerned. Defendants conveyed their one-half interest in the Northcrest Drive parcel to plaintiff for the sum of $42,000. In doing so, defendants "gave up" their option to purchase the property and also "gave up" a credit of $416.66 per month for twelve months.

After the parties severed their relationship, plaintiff leased his Northcrest Drive parcel to National Pride Car Wash and defendants leased their Eighth Avenue parcel to National Pride. The parties agree that as of the date of National Pride's lease the lease between them terminated.

It is plaintiff's insistence that he is entitled to rent for the nineteen months that defendants occupied the premises, *i.e.*, from 21 February 1979 to 15 October 1980 when the premises were leased to National Pride.

Defendants insist that it was the intention of the parties that with the conveyance to plaintiff and the lease to National Pride all obligations between the parties were terminated.

The principal question is whether nineteen months rental payments had accrued when the lease was cancelled.

The trial court found as follows:

In [February] 1979 the parties amended the lease. Although there is an ambiguity in the amendment, the parties agree in their testimony that the intent was to impose a two year moratorium on the payment of rent. The lease was cancelled during that two year period. There was thus no accrued rent when the lease was cancelled.

Moreover, even if the rent had accrued, there is corroborating evidence to support the defendants' contention that the 1980 transaction forever ended the parties' relationship and cancelled all obligations. The defendants gave up valuable rights under the lease.

Finally, even if the plaintiff had established that he is entitled to recover rent, he has not proven the amount of rent due.

Plaintiff's first issue is whether the trial court erred in finding that "the defendant tenants were not liable for rent that had accrued but not paid upon agreed termination of the lease."

We first note that the trial court found that the rent had not accrued but that, even if it had, it was the agreement of the parties that the 1980 transaction ended the parties relationship and cancelled all obligations and that there was a valuable consideration for this agreement.

Plaintiff insists that *res judicata* applies in this case and that the trial court was in error in holding that the nineteen months' rent had not accrued.

This is the second appeal of this case. *See Galbreath v. Harris*, 779 S.W.2d 392 (Tenn.App.1989). The issue in the first appeal was whether the trial court erred in granting defendants' motion for summary judgment. We held that the trial court did err, because there was a "factual dispute" regarding the intention of the parties.

We did state that there was a disagreement between the parties regarding whether the defendants, under the evidence in the record at that time, had been released from their "obligation to pay the accrued rent."

A plea of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. *Lillard v. Yellow Mfg. Acceptance Corp.*, 195 Tenn. 686, 696, 263 S.W.2d 520, 524 (1953).

We held that it was error to grant defendants' motion for summary judgment under the record at that time and, therefore, reversed the trial court. In effect, we denied the motion for summary judgment.

"A denial of summary judgment indicates that the moving party has failed to establish that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law; a trial therefore is necessary." *Williamson County Broadcasting Co. v. Williamson County Bd. of Educ.*, 549 S.W.2d 371, 372–373 (Tenn.1977) (citation omitted).

A denial of a motion for summary judgment is not an adjudication upon the merits and is not conclusive of rights, questions and facts in issue.

Plaintiff's first issue is without merit.

By his second issue, plaintiff says the trial court erred in finding that "the parties agreed that the debt was discharged."

 There is conflicting evidence in the record. However, there is evidence from which the court could find: (1) that it was the intention of the parties that defendants would convey the Northcrest parcel to plaintiff "to dissolve the partnership," *i.e.*, the joint ownership of the Northcrest property; (2) that the parties intended their business relationship would terminate; and (3) that in order to do so defendants gave up their rights to "purchase the property" and their option "to continue under the lease." Defendants also gave up the credit of $416.66 per month for twelve months, as well as "any rights" they had under "any agreement" with plaintiff.

The findings of the trial court which are dependent upon determining the credibility of witnesses are entitled to great weight. *Town of Alamo v. Forcum–James Co.*, 205 Tenn. 478, 483, 327 S.W.2d 47, 49 (1959). The reason for this is that the trial judge alone has the opportunity to observe the manner and demeanor of the witness while testifying. On an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings. *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. App.1974).

The appellant on appeal has the burden of showing that the evidence preponderates against the findings of the trial court. *Capital City Bank v. Baker*, 59 Tenn.App. 477, 493, 442 S.W.2d 259, 266 (1969). Here, the plaintiff-appellant has failed to carry that burden.

 Plaintiff also argues that defendant Robert Harris' testimony regarding the termination varies the terms of a written contract and "parol evidence is not admissible at law to vary the terms of a written contract." *American Fruit Growers, Inc. v. Hawkinson*, 21 Tenn.App. 127, 135, 106 S.W.2d 564, 569 (1937). We agree that this is the general rule. However, here the defendants' testimony was not an attempt to alter or vary the terms of the written contract. Rather, it was to show there had been a modification in 1980 of the February 1979 amendment by consent of the parties.

> [B]y the rules of the common law, it is competent for the parties to a simple contract in writing, before any breach of its provisions, altogether to waive, dissolve, or abandon it, or to add to, change, or modify it, or vary or qualify its terms, and thus make it a new one. The reason for this is that simple contracts, whether written or otherwise, are, in the absence of a statute changing the rule, of the same dignity in contemplation of law, and therefore the written contract may be changed, modified, or waived in whole or in part by a subsequent one, express, written, oral, or implied. It has been said that a subsequent parol modification of a written contract upon a new consideration constitutes a new agreement.

17 Am.Jur.2d *Contracts* § 466 (1964).

After a written contract is made, it may be modified by the express words of the parties in writing, as well as by parol. *Co-Operative Stores Co. v. United States Fidelity & Guaranty Co.*, 137 Tenn. 609, 622, 195 S.W. 177, 180 (1917).

Whether written or oral, modifications of written contracts must be with the consent of both parties. *V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd., Inc.,* 595 S.W.2d 474, 482 (Tenn.1980).

The trial court found, and the evidence does not preponderate against that finding, that there was a modification of the contract and that this modification was with the consent of both parties. The court properly allowed the parol evidence to show the modification.

This issue is without merit.

Because of our holding in issues one and two, we pretermit plaintiff's third issue regarding damages.

The judgment of the trial court is affirmed with costs assessed to the plaintiff and the cause remanded to the trial court for the collection of costs and any further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.

## ORDER ON PETITION TO REHEAR

Plaintiff–Appellant has filed a most respectful petition to rehear which the Court has considered and found to be without merit.

It is therefore ORDERED that the petition be and the same is hereby overruled.