IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 21, 2004 Session

## MARY E. FOSSETT, ET AL. v. DOROTHY GRAY, ET AL.

**A Direct Appeal from the Chancery Court for Fayette County**
**No. 9581    The Honorable Dewey C. Whitenton, Chancellor**

---

**No. W2003-00973-COA-R3-CV - Filed September 16, 2004**

---

Numerous heirs to property in Fayette County sought to sell two parcels of land for partition. Defendants/Appellees opposed the partition of one of the tracts. The trial court ordered that both tracts be sold for partition by auction, which was held on September 30, 2000. During the pendency of the partition suit, an investor bought the fractional interests in the property from numerous heirs, and intervened as a defendant in the case. The interest of the intervening defendant was foreclosed upon by the individual who had loaned him funds to purchase the fractional interests in the land. After the foreclosure, first intervening defendant brought a cross-claim against second intervening defendant/appellant. The trial court entered a judgment against second intervening defendant for the amount of overbid at foreclosure, $150,000. Second intervening defendant/appellant appeals and also appeals the final judgment in the partition case. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

John W. Harris, Jr., Intervening Defendant/Appellant, *Pro Se*

James F. Schaeffer, Jr., of Memphis, For Appellees, Mary Fossett and James F. Schaeffer, Sr.

Randall J. Fishman, of Memphis, For Appellee, American Logistical Properties, Inc.

### OPINION

This appeal involves a partition suit to two tracts of land in Fayette County, Tennessee. Numerous heirs of the subject property sought to have it sold for partition. The trial court decreed that both tracts be sold for partition. Intervening defendant, Dr. John W. Harris, Jr. ("Dr. Harris"), appealed from the chancery court's final judgment and presents numerous issues for review.

# I. FACTUAL AND PROCEDURAL HISTORY

*The Partition Lawsuit*

This appeal concerns a suit to partition two tracts of land, comprising approximately 130 acres, in Fayette County, Tennessee. Parcel I (also known as the "Granderson Grandberry tract") consisted of approximately 116.5 acres of land; Parcel II (also known as the "Cassie Grandberry tract") consisted of approximately 13.8 acres of land. Both tracts originally belonged to Granderson Grandberry, who died intestate in 1910. Granderson Grandberry was survived by nine children who inherited his interest in the tracts of land at issue in this litigation. However, it appears that no action was taken to determine the status of the title to the property until 1978, when Mary Fossett, one of the heirs of Granderson Grandberry, contacted attorney James Schaeffer, Sr., to discuss the possibility of determining the heirs to the property.

Mr. Schaeffer investigated the status of title to the property and conducted extensive research to determine the heirs to the property. In 1991, numerous heirs to the property contracted with Mr. Schaeffer to bring an action to quiet title, determine the heirs, and partition the land. In 1992 Mr. Schaeffer filed the Complaint to Determine Heirship, to Quiet Title, and to Sell Land for Partition, in the chancery court of Fayette County. In June of 1996 the chancery court entered its first Order on Complaint to Determine Heirship, to Quiet Title, and to Sell Land for Partition.

*The Dispute Over Parcel II*

Shortly after the chancery court entered its order, Granville Grandberry and Wilma Buckley, two heirs to the Grandberry property, petitioned the court to set aside its order of June, 1996. They asserted that their contract with Mr. Schaeffer, Sr., had only pertained to Parcel I, the larger of the two tracts, and that the court had improperly ordered the sale of Parcel II. The resolution of the partition suit was delayed by these objections, as well as by other complications, including the death of some heirs, the discovery of other heirs, and other difficulties occasioned in partitioning land among such a large number of heirs.

*The Intervention of American Logistical Properties, Inc.*

Thomas Burrell, through his company, American Logistical Properties, Inc. (ALP), contacted a number of the heirs to the Grandberry estate and purchased their fractional interests in the land. Ultimately, a large number of heirs sold their fractional interests in the land to ALP, which was then allowed to intervene in the litigation. ALP opposed the sale for partition of Parcel II on the ground that it had acquired all the fractional interests in Parcel II; however, the purported conveyance to ALP by one heir, Jerry Cotton, was later revoked by Cotton on the basis of his minority at the time of the conveyance.

ALP's purchase of the fractional shares in the land was made possible, in part, by a loan of approximately $100,000 made by Dr. Harris, who in turn received promissory notes in the amount of $375,000 secured by a deed of trust on the fractional interests in the property acquired by ALP.

*The Property Interest Acquired by Plaintiff's Attorney*

While the partition suit was pending, one of the plaintiffs and Grandberry heirs, Killis Truehart, became ill and asked the plaintiffs' attorney, James F. Schaeffer, Sr., to advance him his share of the proceeds from the anticipated sale for partition. Mr. Schaeffer advanced him the funds, and Killis Truehart transferred his ownership interest in the property to Mr. Schaeffer. Upon learning that Mr. Schaeffer held an ownership interest in the subject property, ALP filed a motion to disqualify Mr. Schaeffer, asserting that Mr. Schaeffer's acquisition of the interest in the property constituted a violation of numerous Ethical Considerations and Disciplinary Rules of the Tennessee Code of Professional Responsibility. Noting that Mr. Schaeffer, Sr., had agreed to convey the fractional share of the land to the Clerk and Master of the Fayette County chancery court pending further orders of the court, the court denied the motion to disqualify Mr. Schaeffer.

*The Foreclosure by Dr. John W. Harris, Jr.*

In November 1999, Dr. Harris (who had helped finance ALP's acquisition of the fractional interests in the Grandberry property by loaning funds to ALP) learned that Burrell had failed to pay the property taxes on the property, in violation of the loan agreement between ALP and Harris. Dr. Harris immediately instituted foreclosure proceedings on the property. The Court then permitted Dr. Harris to intervene as defendant in the lawsuit. Dr. Harris has acted pro se during his involvement in this litigation. Dr. Harris, who stepped into the shoes of ALP when he foreclosed upon the property and intervened in this litigation, was bound by ALP's admissions as to the identity of the heirs and the fractional interests owned by the heirs of the subject property.

*The Cross-Claim by ALP*

When Dr. Harris loaned approximately $100,000 to ALP, he received a promissory note in the amount of $375,000. At the foreclosure sale of the fractional interests acquired by ALP, Dr. Harris placed a winning bid of $250,000 for the property, $150,000 more than he had actually advanced to ALP. ALP filed a cross-claim against Harris for the excess funds. At a hearing held on May 23, 2002, the Court awarded a judgment against Dr. Harris in the amount of $150,000.

*The Chancery Court's Final Decree*

On January 28, 2003, the Fayette County Chancery Court, Dewey C. Whitenton, Chancellor, entered its final decree in this matter. The decree reads, in relevant part:

> IT IS ... ORDERED, ADJUDGED AND DECREED by the Court that the prior Orders of this Court concerning partition by sale of the subject lands and the approval of the sale of the lands as a result of the auction of the land held on

-3-

September 30, 2000 are incorporated herein by reference and made a part of this final decree.[1]

IT IS FURTHER ORDERED by the Court that the Order awarding damages in the amount of $150,000.00 to American Logistical Properties, Inc. and against Dr. John W. Harris, Jr., Trustee, is incorporated herein by reference and made a part of this final decree.[2]

IT IS FURTHER ORDERED by the Court that the attorneys are awarded their reasonable and necessary expenses in the amount of $18,500.00 which shall be paid out of the common fund created by the sale of the land and being held pursuant to orders in trust by the clerk of this Court.

IT IS FURTHER ORDERED by the Court that said attorneys shall be awarded their reasonable and necessary attorneys fees in the amount of $100,000.00 likewise out of the common fund created by the sale of the land and being held by the clerk of this Court.

IT IS FURTHER ORDERED by the Court that the attorneys are awarded additional attorneys fees in the amount of $56,850.00 which fees shall be paid exclusively from the undivided shares and interests of Dr. John W. Harris, Jr. and which the Court found above were the result of the delay and unnecessary expense caused by Dr. Harris in this cause.

The costs of this cause are adjudged against the common fund created by the sale of the land and being held by the clerk of this Court for which execution may issue as necessary.

On April 2, 2003, the Court entered an Order on Plaintiffs' Motion to Alter or Amend Judgment, awarding Plaintiffs' counsel "to recover pre-judgment interest on their expenses incurred prior to 01-01-98 in the amount of $9,673.73 to accrue at the rate of 10% simple interest from and after January 1, 1998 to the date of the Final Decree entered on January 29, 2003 ...."

Dr. Harris filed his Notice of Appeal on April 21, 2003.

## II. STANDARD OF REVIEW

---

[1] On May 28, 1999, the chancery court entered a Decree for Partition of Land, finding that owners of fractional interests in both Parcels I and II desired that the land be sold for partition and that it was in the best interests of the parties that both parcels be sold as one tract. The court ordered that the land be surveyed by the Fayette County Surveyor within sixty days and "sold ... as soon as lawful and practicable." On July 12, 2000, the chancery court entered an Order Granting Plaintiff's Motion to Allow Engaging an Auctioneer and/or Real Estate Agent to Assist the Clerk and Master in Conducting and Consummating the Sale as Special Commissioner. On August 4, 2000, the chancery court entered an Order Approving Auctioneer's Contract.

[2] On May 23, 2002, the chancery court entered an Order of Judgment against Dr. Harris. The court's Order stated, "It ... appears to the Court that after a full hearing and consideration of all of the evidence and exhibits presented at trial, that the Plaintiff be and is hereby awarded a Judgment against Defendant, John W. Harris, Jr., Trustee for the sum of One Hundred Fifty Thousand and No/100 ($150,000.00) Dollars."

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court's conclusions of law. ***Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996)** and Tenn. R. App. P. 13(d). The trial court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. ***Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993)**.

## III. ISSUES FOR REVIEW

This case consolidates two separate appeals, one involving the cross-claim of American Logistical Properties, Inc., against Dr. Harris arising from the purchase of the interest in the property by ALP, Inc., and the subsequent default and foreclosure; and the other arising from the partition lawsuit in which Dr. Harris was Intervening Defendant. In each appeal, Dr. Harris raises multiple issues.

*Appeal I*

**Issue 1:**    **Did the court err by allowing ALP and Thomas Burrell to remain in the lawsuit after Dr. Harris foreclosed on ALP?**

Harris asserts that the chancery court erred in permitting ALP to remain in the lawsuit after he foreclosed on ALP's interest in the property at issue. ALP's continued involvement in the lawsuit was premised on ALP's cross-claim against Harris arising out of the foreclosure. Tenn.R.Civ.P. 13.07 governs when a party may bring a cross-claim against a co-party:

> A pleading may state as cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action.

ALP was the original defendant in this matter until the appellant, Dr. Harris, foreclosed upon ALP's interest in the property. The chancery court found that Harris bought the property at the foreclosure sale for $250,000, an amount that was $150,000 in excess of the consideration he advanced to ALP. In its cross-claim, ALP alleges that Dr. Harris's loan was usurious and that Dr. Harris should be liable for the $150,000 overbid. Without question, ALP's cross-claim against Mr. Harris "relat[es] to ... property that is the subject matter of the original action." Therefore, we find no error in the chancery court's decision to allow ALP to remain in the lawsuit to litigate its cross-claim against Mr. Harris.

**Issue 2:**    **Did the court err by awarding ALP/Burrell a $150,000 judgment at the end of the trial?**

The second issue Dr. Harris raises in this appeal is whether the chancery court erred in awarding ALP a judgment against Dr. Harris in the amount of $150,000 as a result of Dr. Harris's overbid at the foreclosure sale of the property. In his brief, Dr. Harris alleges that the chancery court's ruling "amounted to an improper modification of the contract between the parties." Dr. Harris further maintains that he is *owed* $125,000, since the amount on the face of the note was $375,000, and he bid $250,000 on the land at the foreclosure sale.

The implicit basis for the chancery court's award of the $150,000 judgment against Dr. Harris was that the terms of the loan were usurious. In its trial opinion, the court wrote:

> ... Dr. Harris loaned American Logistical the sum of approximately $100,000.00 and received promissory note(s) in an amount substantially in excess of the actual amount loaned and the notes were secured by a Trust Deed on the interests of the heirs acquired by American Logistical.

The promissory notes had a value of $375,000, and were given in exchange for consideration of $100,000. They were therefore usurious on their face. Under Tennessee law, courts look to the substance, not the form, of a transaction in determining whether the terms of a loan are usurious. As this court explained in *Adams v. Schwartz*, **356 S.W.2d 597, 600 (1960)**, "If the contract is in truth and fact a loan of money at usurious rates, it matters not what devices may be resorted to for the purpose of concealing its true character, the law will strip from it these devices, and adjudge it by what it is in fact, rather than by what it may in its terms appear to be." Therefore, the chancery court could correctly have found that the contract was usurious and that Appellant, Dr. Harris, was only owed $100,000, the amount of consideration he extended to ALP.

Since the chancery court found that Dr. Harris was owed $100,000 by ALP, the court was correct in awarding ALP a judgment for $150,000, as the surplus from the foreclosure sale. A creditor is entitled only to the balance owed to him out of the proceeds of the foreclosure sale; any surplus goes to the debtor. **See *Guinn v. Locke*, 1858 WL 2865 (Tenn. 1858), at \*2**.

*Appeal II*

***Issue 1*:** **Did the court err by allowing plaintiffs' attorney, James F. Schaeffer, Sr., to remain as plaintiffs' attorney after he purchased an interest in the property that is the subject of this dispute?**

Dr. Harris contends that the chancery court erred in permitting plaintiffs' attorney, James F. Schaeffer, Sr., to continue representing plaintiffs after he purchased an interest in the property at issue in this dispute. As the basis for this assignment of error, Dr. Harris alleges that Mr. Schaeffer's acquisition of this property interest was in violation of numerous provisions of the Tennessee Code of Professional Responsibility, particularly Ethical Consideration 5-2, which reads, in relevant part:

After accepting employment, a lawyer carefully should refrain from acquiring a property right or assuming a position that would tend to make the lawyer's judgment less protective of the interests of his client.

Whether Mr. Schaeffer's action in purchasing the land should have disqualified him from continued representation of the Plaintiffs is a matter for the sound discretion of the chancery court. We note at the outset that this Court has stated in the past that "courts should be reluctant to disqualify a litigant's counsel of choice and should grant disqualification motions sparingly." ***Whalley Dev. Corp. v. First Citizens Bancshares, Inc.*, 834 S.W.2d 328, 331-2 (Tenn.Ct.App. 1992)**. Furthermore, "[c]ourts should disqualify counsel with considerable reluctance and only when no other practical alternative exists." ***In re Ellis*, 822 S.W.2d 602, 605 (Tenn.Ct.App. 1992)**. Keeping in mind that disqualification of an attorney is a drastic option to be used only when strictly warranted, we must determine whether the chancery court abused its discretion in refusing to disqualify Mr. Schaeffer under the circumstances of this case. The record shows that, in December 1997, Mr. Schaeffer informed, by letter, approximately twenty-five heirs that a settlement agreement had been reached and that they would be paid for their fractional interests in the land at the price of $2,500 per acre. Soon after agreeing to this settlement, one of the heirs, Killis Truehart IV, contacted Mr. Schaeffer and explained that he was in desperate need of the funds due to a medical condition that required Mr. Truehart's immediate return to California. Mr. Truehart asked Mr. Schaeffer to advance him the funds for the sale of Mr. Truehart's fractional interest in the land; in consideration, Mr. Truehart would convey his fractional interest in the land to Mr. Schaeffer. Mr. Schaeffer agreed to this arrangement and advanced the funds to Mr. Truehart. There is evidence in the record that Mr. Schaeffer intended to transfer the deed to Mr. Burrell upon the conclusion of the settlement, but the settlement fell through, and Mr. Schaeffer did not transfer the deed to Mr. Burrell at the expected time. However, he did divest himself of the interest by conveying the property to the clerk and master of the chancery court, as trustee, pursuant to an order of the chancery court and pending further orders by the court.

Under the circumstances of this case, we find that the chancery court did not abuse its discretion in refusing to disqualify Mr. Schaeffer. The chancery court could reasonably have found that Mr. Schaeffer, in advancing the funds to Mr. Truehart in exchange for a quitclaim deed to the property, was only trying to help Mr. Truehart and did in fact intend to transfer the title to Mr. Burrell upon the consummation of the settlement. The fact that Mr. Schaeffer transferred the property to the clerk and master removes any suggestion of impropriety from Mr. Schaeffer's conduct. We therefore find this issue to be without merit.

*Issue 2*:  **Did the court err by allowing the 13.8 acre tract to be sold when it was not included in the original partition contract of Plaintiffs' attorney?**

Appellant, Dr. Harris, next alleges that the chancery court erred in ordering Parcel II, the 13.8 acre tract, to be sold when it was not included in the plaintiffs' original partition contract with their attorneys. Dr. Harris argues that only the larger of the two tracts should have been partitioned.

We must first point out that Dr. Harris has no rights under the plaintiffs' contract with their attorney. Dr. Harris cannot be heard to base his appeal on the plaintiffs' contract with their counsel.

We will therefore construe Dr. Harris' second assignment of error in more general terms, as a challenge to the chancery court's legal authority to partition the second, smaller tract of land.

We concede that plaintiffs must meet a high burden to sell land for partition, when any tenant in common opposes the sale. "A sale for division will be ordered only if the premises are so situated that the partition thereof cannot be made or where the premises are of such description that it would be manifestly for the advantage of the parties that the same be sold instead of partitioned. If either of the foregoing conditions exist, a sale is justified.... The burden of proof is on him who seeks the sale." **Glenn v. Gresham, 602 S.W.2d 256, 258 (Tenn.Ct.App. 1980)**. The chancery court found, upon hearing expert testimony, that the land was not suitable for partition in kind. The court, in its trial opinion, wrote:

> After the action was filed in 1994 .... James Thompson, an experienced Fayette County real estate broker, was employed to appraise the property and to evaluate whether or not the land could be partitioned in kind.
>
> At the hearing of the cause in May, 1996 ... Mr. Thompson testified concerning the partitioning of the land in kind. The Court found that the land was not suited to be equitably partitioned in kind. This finding was based upon the location and topography of the property, the number of acres, and the large number of heirs.

No transcript of the May, 1996 hearing was included in the record on appeal. In **Coakley v. Daniels, 840 S.W.2d 367 (Tenn.Ct.App.1992)**, this Court noted:

> Where the issues raised go to the evidence, there must be a transcript. In the absence of a transcript of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment. *McKinney v. Educator and Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn.Ct.App.1977). This rule likewise applies where there is a statement of the evidence which is incomplete. The burden is upon the appellant to show that the evidence preponderates against the judgment of the trial court. *Capital City Bank v. Baker*, 59 Tenn.App. 477, 493, 442 S.W.2d 259, 266 (1969). The burden is likewise on the appellant to provide the Court with a transcript of the evidence or a statement of the evidence from which this Court can determine if the evidence does preponderate for or against the findings of the trial court.

**Id. at 370.** *See also* **Scarbrough v. Scarbrough, 752 S.W.2d 94, 97 (Tenn.Ct.App.1988)** ("When the trial court hears the evidence, but the evidence is not included in the record on appeal, it is presumed that the evidence supports the ruling of the trial court."). We must presume, therefore, that the evidence does not preponderate against the chancery court's ruling that the property could not

be partitioned in kind. We find no error in the chancery court's order to sell for partition both tracts of land, Parcels I and II. This assignment of error is without merit.

***Issue 3*: Did the court err by awarding a $56,850 punitive award to the plaintiffs' attorney resulting from the intervention of John W. Harris, Jr., Trustee?**

Dr. Harris next contends that the chancery court erred in ordering that he pay $56,850.00 in attorney fees to plaintiffs' attorneys, Mr. James Schaeffer, Sr. and Mr. James Schaeffer, Jr., due to the delay that was caused by his intervention in this litigation. In its trial opinion, the court stated:

> [T]he Court finds that it is reasonable that Dr. Harris should pay, in addition to his pro-rata part of the $100,000.00 fee and the expenses, for a substantial portion of the fees of the attorneys for the plaintiffs incurred since the intervention of Dr. Harris in this cause. Dr. Harris, of course, now is the owner of the undivided interests of Mr. Burrell and American Logistical as a result of the foreclosure sale. It is the additional litigation time created by Dr. Harris in his attempt to re-litigate settled issues, and to unduly delay this matter, that the Court finds should be compensated by him out of the sale funds due him.

> Therefore, the Court, after reviewing all of the credible evidence, finds it is equitable that Dr. Harris should pay, in addition to his pro-rata part of the $100,000.00 attorneys fee and the expenses, attorneys' fees, for the extraordinary litigation and trial preparation time required as a result of his intervention in this case.

It is a general rule in this State that litigants must pay their own attorney fees. ***Howard G. Lewis Const. Co., Inc. v. Lee*, 830 S.W.2d 60, 64 (Tenn.Ct.App.1991)**. In the absence of a statutory provision or a contractual agreement between the parties, attorney fees, incurred by a litigant, are not a proper element of damages. ***John J. Heirigs Const. Co., Inc. v. Exide*, 709 S.W.2d 604, 609 (Tenn.Ct.App.1986)**; ***Goings v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 847, 848 (Tenn.Ct.App.1972)**. Such an award is contrary to the public policy of Tennessee. ***Howard G. Lewis Const. Co., Inc.*, 830 S.W.2d at 64**.

In the case at bar, the chancery court cited no statutory authority for its award of attorney fees as damages. We note that Rule 11 of the Tennessee Rules of Civil Procedure permits the award of attorney fees as a sanction against a party, when a court finds that that party has presented pleadings, motions, or other papers to the court "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." This basis for sanctions under Rule 11 is similar to the chancery court's stated reason for awarding additional attorney fees in the case at bar. However, there is no indication in the record that a party made a motion for sanctions under Rule 11.02, or that the court followed the procedure prescribed by Rule 11 when the court initiates sanctions on its own initiative.

Because we find no authority, other than Rule 11, for awarding attorney fees as a sanction, and because there is no indication that the procedure required by Rule 11 was followed by the chancery court, we vacate the award of $56,850.00 attorney fees as a sanction, and we will remand this issue to the trial court for further proceedings for the purpose of considering whether Rule 11 sanctions against Dr. Harris are merited.

*Issue 4*:      **Did the court err by refusing to appoint commissioners to partition the disputed land?**

Dr. Harris next alleges that the chancery court erred in refusing to appoint commissioners to partition the land at issue in this litigation, pursuant to T.C.A. 29-27-114 (2001). The statute in question reads, in relevant part:

> Whenever the judgment of partition is rendered, the court will appoint three (3) or more respectable freeholders, any three (3) of whom may perform the duty, to make the partition so adjudged, according to the respective rights and interests of the parties, as the same are ascertained and determined.

In this case, the chancery court found that the land was not amenable to partition in kind, and ordered that the land be sold for partition. The chancery court refused to appoint commissioners, explaining that the statute only required the appointment of commissioners when land is to be partitioned in kind. Dr. Harris contends that the court should have appointed commissioners even though the land was to be sold for partition.

A close reading of T.C.A. 29-27-114 (2001) and related statutes reveals that the appointment of commissioners is contemplated only when a court has ordered land to be partitioned in kind. It is implicit in the phrase, "make the partition so adjudged," that the commissioners will be making a physical partition of the land; i.e., a partition in kind. This reading is borne out by a reading of T.C.A. 29-27-116 (2001), in which the role of the commissioners is described only in the context of a partition in kind:

> In making partition, the commissioners shall divide the premises and allot the several shares to the respective parties, quality and quantity relatively considered, according to the respective rights and interests of the parties as adjudged by the court, designating the several shares by posts, stones, marked trees, or other permanent monuments; and they may employ a surveyor, with the necessary assistants, to aid therein.

This description of the procedure the commissioners are to follow, "designating the several shares by posts, stones, marked trees, or other permanent monuments," clearly contemplates their involvement only in a partition in kind. Such procedure, performed "according to the respective rights and interests of the parties as adjudged by the court," would have no purpose in a sale for

partition. Clearly, the only role contemplated for these commissioners is pursuant to a partition in kind. Therefore, we find no error in the chancery court's refusal to appoint commissioners.

*Issue 5*: **Did the court err by awarding Plaintiffs' attorney $18,500 for expenses and in awarding pre-judgment interest on $9,673.73 of the $18,500?**

Dr. Harris contends that the chancery court erred in awarding plaintiffs' attorneys $18,500.00 for expenses, and further erred in awarding the plaintiffs' counsel pre-judgment interest on $9,673.73 of that amount, at the rate of 10% simple interest from January 1, 1998.

The amount of expenses to which plaintiffs' attorneys are entitled is a question of fact. A presumption of correctness attaches to the chancery court's factual findings, and will be reversed only if the evidence preponderates against the chancery court's factual finding. Having reviewed the record, including the record of expenses submitted by plaintiffs' attorneys, we do not find that the evidence preponderates against the chancery court's award of $18,500.00 in expenses to plaintiffs' counsel.

> The Tennessee prejudgment interest statute, T.C.A. 47-14-123 (2001), states, in relevant part:
> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity ....

The statute's definition of prejudgment interest as an "element of, or in the nature of, damages," suggests that an award of prejudgment interest is available only to *parties* to a case---not to their attorneys. An attorney is not a party to a case and cannot be awarded damages for delay caused by a party's intervention, however vexatious it may have been. This conclusion is supported by the reasoning of our supreme court, in the case of ***Myint v. Allstate Insurance Co.*, 970 S.W.2d 920 (Tenn. 1998)**, in which the court explains the rationale underlying prejudgment interest:

> Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that **the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled**, not to penalize a defendant for wrongdoing.

**Id. at 927.** Prejudgment interest, then, is not properly awarded to counsel for the costs incurred in representing a client. In this case, the plaintiffs' attorneys have been awarded their costs and a fair attorney fee. We therefore reverse the chancery court's award of prejudgment interest on the amount of $9,673.73, and order that the plaintiffs' attorneys be awarded $18,500.00 for their costs, without interest.

*Issue 6*: **Did the court err in requiring Intervening Defendant pay a pro rata share of the $100,000 attorney fee in this cause?**

Dr. Harris contends that chancery court erred in ordering that the attorney fee awarded to the Shaeffers be paid from the common fund of proceeds from the sale of the land, with the effect that Dr. Harris must pay a pro rata share of the $100,000 attorney fee in this case. The Tennessee statute governing the award of attorney fees in partition cases is T.C.A. 29-27-121 (2001), which reads, in relevant part:

> The court may, in its discretion, order the fees of the attorneys for the complainant and defendant to be paid out of the common fund, where the property is sold for partition ....

We review the chancery court's decision for abuse of discretion.

We begin our analysis by noting that the "common fund doctrine" rests on the equitable principle that all individuals who have "received a benefit should bear some of the cost of obtaining that benefit." *Method of Calculating Attorneys' Fees Awarded in Common-Fund or Common-Benefit Cases—State Cases*. 56 A.L.R.5th 107 (1998). The common-fund doctrine is commonly invoked in the context of class-action lawsuits, but it is also widely applied in partition cases. We are persuaded by the reasoning of the Alabama Supreme Court which stated that "when attorney's fees are allowed [to be paid from the common fund in partition cases], it is on the basis of, and solely for, the benefits inuring to the common estate and to the tenants in common ...." **Godwin v. Dorgan, 811 So.2d 503, 506 (Ala. 2001) (quoting *Ex parte Martin*, 775 So.2d 202, 206 [Ala.2000]).**

The chancery court, in making its determination that a sale for partition is necessary, must do so in light of what is most beneficial to all tenants in common. Therefore, this court must presume that the efforts of the plaintiffs' attorneys, the Schaeffers, in seeking the partition of the land, redounded to the benefit of all parties with an interest in the land, Dr. Harris as well as the Schaeffers' clients. In light of the fact that all parties enjoyed the benefits of the Schaeffers' representation, it is equitable that all the parties, including Dr. Harris, should pay their share of the attorney fees in proportion to their interest in the land at issue in this litigation. We therefore find that the chancery court did not abuse its discretion in ordering that Dr. Harris pay a pro rata share of the attorney fees.

*Issue 7*: **Did the court err in disbursing from the general fund the auctioneer's fee of $60,000.00?**

Dr. Harris's final assignment of error concerns the disbursement of the auctioneer's fee of $60,000 from the general fund. The court, in its Order Approving Auctioneer's Contract entered on August 4, 2000, directed that the auctioneer should receive a 6% commission from the sale of the land and should be allowed expenses incurred in connection with the sale not to exceed $7,000.

Under T.C.A. 35-5-112 (2001), the chancery court has discretion to appoint and fix the compensation of an auctioneer in a public sale of property:

Auctioneer services and fee. (a) Whenever real or personal property is to be sold at public sale under any order or decree of any court in this state, the court, judge, or chancellor under whose jurisdiction such sale is to be made has the discretionary authority to secure the services of an auctioneer licensed in this state to conduct such public sale and to fix the auctioneer's fee, such fee to be not more than six percent (6%) of the sale price of real property.

As we explained in our discussion of Appeal II, Issue 6, *supra*, we believe that the sale for partition benefitted all parties, including Dr. Harris. Under such circumstances, it is appropriate to order such fees to be paid out of the common fund, so that they are paid on a pro rata basis, proportionately to the amount of benefit a party derived from the sale. We therefore find that the chancery court did not abuse its discretion when it ordered that the auctioneer's fee be paid out of the common fund. This assignment of error is without merit.

## IV.  CONCLUSION

The judgment of the chancery court ordering that Dr. Harris pay $56,850 in additional attorney fees to plaintiffs' attorneys out of his share of the sale proceeds is reversed; we remand this case to the trial court for further proceedings under Tenn. R. Civ. P. 11 to determine whether Rule 11.02 sanctions against Dr. Harris are warranted. We also reverse the chancery court's award to Plaintiffs' attorneys of prejudgment interest on the amount of $9,673.73. The chancery court's judgment is affirmed in all other respects. Costs of this appeal are assessed to Dr. John W. Harris, Jr. and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.